## JANE L. FROSH V. CITY OF GALVESTON.

No. 2675.

1. **Street Improvements—Assessment—City Charter.**—The charter of the city of Galveston, section 128, relating to street improvements, etc., provides "that the city council before beginning any such improvement shall, for the purpose of acquiring the most reliable information practicable of the probable cost thereof, cause an estimate to be made by the city engineer or some other officer of the city, or by a committee of aldermen, * * * and upon consideration of said report of said officer or committee the council shall determine whether or not said work or improvement shall be made," etc.  *Held:*

1. That this *report* is made a condition precedent to the exercise of the power to or-der the work (paving a street) to be done.

2. If such street pavement be ordered and made without such report the abutting land owners can not be assessed to pay for the work.

2. **Same.**—Section 127 of the city charter invests the city council with power to or-der and construct street improvements "whenever by a vote of two-thirds of the alder-men elected they may deem such improvement for the public interest." The question is raised but not decided whether the council had power to proceed to order street im-provements until it had been determined by the two-thirds vote of the council that the improvements were for the public interest.

3. **Same.**—In the exercise of the taxing power by municipal corporations the authority conferred is to be strictly construed and must be closely followed.

APPEAL from Galveston.    Tried below before Hon. W. H. Stewart. The opinion states the case.

*Trezevant & Franklin,* for appellant.—1.  A vote by two-thirds of the aldermen elected that they deem the improvement to be for the public interest is a condition precedent to the exercise of the power to improve

plaintiff's streets, and without a compliance with such condition the council has no jurisdiction in the premises. Cool. on Tax., 2 ed., 526; Charter, secs. 127, 158; Horr & Bemis on Ord., sec. 24; Welty on Assess., 276, 288; White v. Stevens, 10 West., 861; S. C., 34 N. W. Rep., 255; Whitford v. Prob. Judge, 53 Mich., 130; Hoyt v. East Saginaw, 19 Mich., 130; Welker v. Potter, 18 Ohio St., 85; Smith v. City of Toledo, 24 Ohio, St., 126; In the matter of the City of Buffalo, 78 N.Y., 362; In the matter of widening Carlton St., 16 Hun., 497; N. Pac. Tel. Co. v. City of Portland, 14 Ore., 24; Covington v. Nelson, 35 Ind., 532; Commonwealth v. Egremont, 6 Mass., 491; Molett v. Kinon, 22 Ala., 484; In re Smith, 52 N. Y., 526.

2. An ordinance or resolution ordering the improvement to be made could not be enacted until after a consideration of the city engineer's report of the estimated expense of the improvement, and such an ordinance or resolution enacted after the consideration of such report should have been set forth in plaintiff's petition either in terms or by its legal tenor and effect. Charter, sec. 128; Cool. on Tax., 285, 659; 2 Dill. Mun. Corp., secs. 800, 811; City of Austin v. Walton, 68 Texas, 507; Lufkin v. City, 56 Texas, 522; City of Delphi v. Evans, 36 Ind., 90; Rich v. Chicago, 59 Ill., 286; Merrett v. Portchester, 71 N. Y., 309.

*Geo. P. Finlay,* for appellee. — 1. Section 127 of the city charter does not require the city council to declare by ordinance or resolution that they deem such improvement for the public interest, but authorizes them to make the improvement by a vote of two-thirds of the aldermen elected whenever they may deem such improvement for the public interest.

" Section 127. The city council shall be invested with full power and authority to grade, shell, repair, pave, or otherwise improve any avenue, street, or alley, or any portion thereof within the limits of the city, whenever by a vote of two-thirds of the aldermen elected they may deem such improvement for the public interest."

In the authorities cited by the appellant in every instance the law or charter required the city council *in totidem verbis* to declare by resolution that the improvement was necessary. Hoyt v. Saginaw, 19 Mich., 44; Welker v. Potter, 18 Ohio St., 85; White v. Stevens, 34 N. W. Rep., 255.

In Hoyt v. Saginaw, 19 Michigan, 44, and in White v. Stevens, 34 Northwestern Reporter, 255, in which the city of Saginaw, Michigan, was a party, the decision was based on a provision of the charter of East Saginaw. which provided "that the city should have the power to improve, etc., whenever they may deem any such improvement necessary, and that whenever the common council shall deem any such improvement necessary they shall so declare by resolution, which shall be drawn by the attorney of the corporation, and said resolution shall describe the contemplated improvement."

The word "deem" in the above law receiving its commonly accepted signification was not considered by the law makers sufficient, and they added "they shall so declare by resolution."

In White v. Stevens, *supra,* the court say: "The second section of the statute under which the proceedings were taken expressly requires that the necessity for the construction of the sewer in question shall be first determined by the common council of the city; the record does not disclose that any such determination was ever made." The law required them "to declare by resolution."

In the case at bar the charter uses the word deem, and its definition is necessary for its true construction. According to Webster the word means "to judge, to think, to estimate." To deem, then, is a simple operation of the mind and does not involve the idea of a resolution or other act of the city council. If this be true, and it can not be rationally doubted, the true reading of section 127 of the city charter is "should have the power whenever they 'judged,' 'thought,' or 'estimated' such improvement for the public interest."

Counsel for appellee has made an examination of the authorities presented by appellant, and herewith presents a resume of the law on which the following cases were decided. Other cases cited by appellant have no special application to the case at bar.

In Hoyt v. The City of East Saginaw, 19 Michigan, 44, the power of the city is thus stated: "The charter of the city of East Saginaw provides that 'the common council shall have full power to lay out, establish, open, extend, widen, straighten, alter, close, fill in, or grade, vacate, or abolish any highways, streets, avenues, lanes, alleys, public grounds, or spaces in said city whenever they may deem it a necessary improvement,' and that 'whenever the common council shall deem any such improvement necessary they shall so declare by resolution, which shall be drawn by the attorney of the corporation, and said resolution shall describe the contemplated improvement.' Laws of 1859, p. 997, secs. 1, 2, title 6. In this case no such resolution was passed, and the court held that the assessment was void."

*In re* City of Buffalo, 78 New York, 362, the charter provided:

"First. The common council must have by resolution declared the intent to take for a street the lands described in the resolution, and the resolution must have been published by the city clerk in the official paper for two weeks.

"Second. Within three months after the expiration of that publication the common council must have declared by resolution that the city has determined to take those lands for that purpose, and that resolution must have been adopted by a vote of two-thirds of all the members of the common council."

The question in the case was as to whether the resolution was adopted

by a two-thirds vote, and the court say: "Now it nowhere appears in the record that the common council of the city of Buffalo passed the resolution of determination to take the lands for Carleton Street by a two-thirds vote of all its members. The journal shows no such vote nor is there proof of it *aliunde.*"

In Molett v. Kinon, 22 Alabama, 484, the question was one of notice, arising under the following law: "Provided, that said court (commissioners) shall in no instance grant an order to establish, discontinue, or change a public road unless the person or persons petitioning for the same shall have given at least thirty days notice of the intended application by advertisement at the court house door and at three other places in the county."

The court say, "This notice must undoubtedly appear upon the proceedings of the court establishing a new road before its jurisdiction over the subject matter begins." The court held the following recital in the proceedings to be insufficient: "Notice in all respects according to the statute was proved by advertisement at the court house door and three other public places in the county." This decision is questionable, besides has no bearing on this case.

In the matter of Smith, 52 New York, 526, the question was one of notice, viz.: "The laws of 1870 declare that no vote shall be taken in either board (of the common council) upon the passage of a resolution or an ordinance until after they shall have been published at least three days." The court says "that this is plain and prohibitory, and as there is no proof that they were published at any time or anywhere, the same is void and the assessment made without authority." It was a local assessment.

In Welker v. Potter and Wife, 18 Ohio State, 85, the provision relied on is thus stated. "In the Act of April 5, 1866 (63 Ohio L., 133), it is provided that when it shall be deemed necessary by the council of any city embraced in that act to make the improvements therein mentioned, it shall be the duty of the council to declare by resolution the necessity of such improvement, which resolution shall be published as specified in the act." The court say: "This precedent condition not having been complied with, the proceedings of the council in passing the ordinance and making the assessment were without authority of law."

The counsel for appellee respectfully submits that no case can be found among those cited by appellant or elsewhere where an ordinance or resolution of public necessity or benefit has been held necessary unless specially required *in totidem verbis* by the law or charter under which the assessment is made.

2. Appellant's fifth special demurrer is as follows: "The said petition does not set forth the legal tenor and effect or the terms of any ordinance or resolution of said city council ordering the alleged improvement to

be made." Appellee denies the facts contained in this assignment of error.

The petition alleges that heretofore, to-wit, on May 24, 1886, the city council of the city of Galveston, in pursuance of the power and authority of the charter and ordinances set forth, adopted the following resolution, to-wit: "Be it resolved by the city council of the city of Galveston, that Twenty-third Street (or Tremont Street), from the north side of Avenue F to the north side of Avenue K, be improved by filling, grading, and paving with cypress blocks, and for this purpose the city engineer be required to make a survey and estimate of the cost of the same in accordance with section 2, article 2, chapter 2, of the Revised Ordinances." The petition further alleges that afterward, on May 24, 1886, the city engineer made a report to the city council, showing among other things that said Jane L. Frosh was the owner of the lots involved in this suit, fronting on Twenty-third Street, within the limits to be improved, together with the estimated cost of paving chargeable to said lots.

The petition further alleges that thereupon the city council, on May 24, 1886, ordered said filling, grading, and paving on said Twenty-third Street, and during the months of June, July, August, and September, 1886, caused the same to be completed.

Section 128 of the city charter and section 2 of the ordinance passed in pursuance thereof provides as follows: "Upon the consideration of said report of said officer or committee" (meaning the engineer's report of the cost, etc.), "the council shall determine whether or not the said work and improvement shall be made, and shall proceed accordingly. When said work or improvement is ordered by the council and shall have been completed, the council shall cause an accurate report of the cost thereof to be made by said officer or committee."

HENRY, ASSOCIATE JUSTICE.—The city of Galveston instituted this suit March 24, 1888, to enforce an alleged assessment and lien under its charter against the north half of lot 14, block 382; lot 1, block 262; and lot 14, block 202, for one-third of the cost of grading, filling, and paving of Twenty-third or Tremont Street in said city, between Avenues F and K, and abutting on said lots. The defendant Jane L. Frost presented general and special demurrers to plaintiff's petition, which were overruled by the court. Defendant excepted to the rulings, and upon the trial before the court without a jury defendant objected to the rulings of the court in the admission and exclusion of evidence, saving the points by bills of exceptions. The court on motion of defendant filed conclusions of law and facts, and rendered judgment of foreclosure and sale of the said lots for the amounts claimed by plaintiff, providing that no execution over should issue against defendant if said lots should not sell for enough to satisfy the amounts respectively adjudged against them. De-

fendant excepted in open court to the conclusions of the law and facts to the judgment, gave notice of appeal, assigned errors, and perfected her appeal.

The charter of the city contains the following provisions:

"Section 127.  The city council shall be invested with full power and authority to grade, shell, repair, pave, or otherwise improve any avenue, street, or alley, or any portion thereof, within the limits of said city, whenever by a vote of two-thirds of the aldermen elected they may deem such improvement for the public interest; provided, the city council pay one-third and the owners of the property two-thirds thereof, except the intersection of the streets from lot to lot across the streets either way shall be paid by the city alone.  Said two-thirds of said cost to be paid by the owners of the property fronting on said thoroughfare shall be assessed on or against said property, and collected by the city whenever such improvement is completed and accepted by the city council; provided further, that not more than twenty thousand superficial yards of such thoroughfares shall be filled, graded, and shelled, or filled, graded, and paved, in any one year.

"Section 128.  That the city council before beginning any such improvements shall, for the purpose of acquiring the most reliable information practicable of the probable cost thereof, cause an estimate to be made of said probable cost by the city engineer, or by some other officer of the city, or by a committee of aldermen, and such officer or committee shall also report a full list of all fronting lots or fractional lots, with number and size of same and number of block in which situated, and the names of the owners thereof, and such other information as may be required by the city council; and if there be any lot or fractional lot the owner whereof is not known the same shall be entered on said list as unknown; and said officer or committee shall enter in said list, opposite each lot or fractional lot lying and being on each side of the street, avenue, or alley, the improvement whereof is contemplated, one-third of the estimated expense of such work or improvement on such avenue, street, or alley fronting, adjoining, or opposite such lot or fractional lot.  Upon consideration of said report of said officer or committee the council shall determine whether or not the said work or improvement shall be made, and shall proceed accordingly.  When said work or improvement is ordered by the council and shall have been completed the council shall cause an accurate report of the cost thereof to be made by said officer or committee.  As part of said report said officer or committee shall present a list of the lots or fractional lots lying and being on each side of the street, avenue, or alley so improved, and upon such list of lots or fractional lots shall be entered opposite each lot or fractional lot one-third of the actual cost and expense of such work or improvement on said avenue, street, or alley fronting, adjoining, or opposite

such lot or fractional lot; and upon the acceptance and approval of said report and list by the city council said amounts shall be imposed, levied, and assessed by the city council on said lots or fractional lots respectively, and collected by the collector, and shall be a lien upon the property until paid.

"Section 129.   That after such action on the part of the city council as above provided for, the collector shall give notice as may be required by ordinance of said assessment being due and within what time payable, and shall commence forthwith to collect the same; that after the expiration of the period for the payment of said assessment said officer shall levy on so much of any property on said list on which said assessment has not been paid as will be sufficient to pay the same, and the same notice of sale as is required in sales for taxes shall be given.   And if said assessment is not paid before the day of sale said officer shall sell said property in the manner and under the circumstances and to the extent and subject to the same conditions which are or may be provided by ordinance for the sale of real estate in the city of Galveston charged with the payment of taxes imposed by said corporation, and said officer shall execute a deed to the purchaser at any such sale, and the provisions of this act in reference to a deed drawn by the collector for taxes shall apply to the deed provided for in this section.

"Section 130.   That in addition to the power and authority granted to the city council to collect said assessments as aforesaid they shall have the further and additional remedy of instituting suit in the corporate name in any court having jurisdiction for the recovery against any owner of said property for the amount due for any such work so made as aforesaid, and the city council shall provide by resolution or ordinance under the provisions of this act for carrying out and executing the powers in this title conferred, and may adopt such resolutions and enact such ordinances and make such regulations as they may deem necessary."

The following ordinances were adopted by the city council to carry into effect said charter provisions:

"Section 1.   That no street improvement by grading and shelling or paving shall be undertaken until the city council has, by special resolution or ordinance, defined the street or streets so to be improved, also the particular kind of improvement to be made, whether by filling, grading, shelling, or paving; and in all such proposed improvements two-thirds of the aldermen elected shall concur.

"Section 2.   When any improvement of a street, avenue, or alley has been determined upon in the manner provided for in the foregoing section, it shall then be the duty of the city engineer to make a careful survey of the street or streets so to be improved, and he shall also make a careful estimate of the cost of such improvement, and shall estimate two-thirds of the probable cost of such work against the real property imme-

diately adjoining and being on either side of such street or streets, not counting the intersection of streets; and the estimates so made shall be returned to the city council on rolls, and such rolls shall define the number of the lot or part of lot, and also the number of block or blocks, and shall give, in detail, the name of the owner or owners of such lots or parts of lots, if to be ascertained, together with the sum so estimated against each lot or part of lot, and if there be any lot or fractional lot the owner whereof is not known, the same shall be entered on said list as unknown, and said officer or committee shall enter in said list opposite each lot or fractional lot lying and being on each side of the street, avenue, or alley, the improvement whereof is contemplated, one-third of the estimated expense of such work or improvement on such avenue, street, or alley fronting, adjoining, or opposite such lot or fractional lot; upon consideration of said report of said officer or committee the council shall determine whether or not the said work or improvement shall be made and shall proceed accordingly.    When said work or improvement is ordered by the council, and shall have been completed, the council shall cause an accurate report of the cost thereof to be made by said officer or committee.    As part of said report, said officer or committee shall present a list of the lots or fractional lots lying and being on each side of the street, avenue, or alley so improved, and upon such lists of lots or fractional lots shall be entered opposite each lot or fractional lot one-third of the actual cost and expense of such work or improvement on said avenue, street, or alley fronting, adjoining, or opposite such lot or fractional lot; and upon the acceptance and approval of said report and list by the city council, said amounts shall be imposed, levied, and assessed by the city council on said lots or fractional lots respectively, and collected by the collector, and shall be a lien upon the property until paid."

On the 24th day of May, 1886, the city council adopted the following resolution:

"Be it resolved by the city council of the city of Galveston, That Twenty-third Street (or Tremont Street) from the north side of Avenue F to the north side of Avenue K be improved by filling, grading, and paving with cypress blocks, and for this purpose the city engineer be required to make a survey and estimate of the cost of the same in accordance with section 2, article 2, chapter 2, of the Revised Ordinances."

It appears that after the adoption of said resolution and on the same day the city engineer made the required report, showing among other things that appellant was the owner of the lots involved in this suit fronting on Twenty-third Street within the limits to be improved, and the estimated cost of paving chargeable to said lots.

The improvement was subsequently made under a contract with the city; and the proportion of the cost thereof assessed against appellant

having been demanded of her and its payment refused, this suit was brought.

The charter of the city clearly requires that before the council shall determine whether or not the improvement shall be made a report shall be made of its probable cost, etc.

This report is made a condition precedent to the exercise of the power to order the work to be done.   Its design is to furnish useful and proper information expressly required to be considered when the determination of the council is made, and being made by the law a condition precedent to the exercise of the power it can not be disregarded either by the council or the court, nor can either the one or the other regard the requirement as immaterial or treat it as merely directory.

It is certainly not less important in public than it is in private enterprises to learn the cost of any improvement before it is entered upon.

The cost of the improvement as estimated by the preliminary inquiry has nothing to do with paying for it, as that must be done according to its actual and not its estimated cost.   The sole and we think the sufficint reason for estimating carefully the probable cost before the work is ordered, and having the information laid before the council, is to enable them to say whether the necessity and importance of the work justifies the expenditure, as may not always be the case, or whether the always limited pecuniary resources of the city will be sufficient for the discharge of the debt.   This would be a prudent thing to do, even if the law did not expressly enjoin it.

In this instance the required report had not been made, nor had the evidence required by the law as a predicate for the judgment of the council been produced.   Instead of that, the judgment was first pronounced, including a direction for the facts to be ascertained and reported afterwards.

An important question in this case is whether it was not necessary as a condition precedent to its power to order the improvement, for the council by a separate vote to declare that they "deemed such improvement for the public interest."  As the cause must be reversed upon the ground referred to above, which will probably be conclusive of this controversy, we do not deem it necessary now to decide the last named issue.

We think it proper to say, however, that there is sufficient doubt about the proper construction of the charter to make it prudent for such vote to be taken, and thus avoid an uncertain contention as to its proper interpretation.

Other objections to the judgment of the District Court are assigned, but their decision not being necessary for the disposition of this case we think it unnecessary to discuss them.

In the exercise of the taxing power by municipal corporations "the

authority conferred is to be strictly construed and must be closely followed." Sedgw. on Stat. and Const. Law, 397.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 26, 1889.